UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SUSAN M. PATTERSON,

                           Plaintiff,

      -against-                                  7:06-CV-0897 (LEK)

MICHAEL J. ASTRUE,
*Commissioner of Social Security*,

                         Defendant.

---

### MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

On April 5, 2004, Plaintiff Susan M. Patterson ("Plaintiff") filed an application for

Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act").  In that application,

Plaintiff asserts that she has been disabled since September 29, 2003.  The Commissioner of Social

Security ("the Commissioner") denied her benefits for lack of disability.

Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3).  Compl. (Dkt. No. 1).  Both parties have moved for judgment on the

pleadings.  For the reasons that follow, the Commissioner's determination of no disability is

vacated, and the matter is remanded for further administrative proceedings.

## II.    BACKGROUND

### A.  Procedural History

Plaintiff filed an application for disability benefits on April 5, 2004.  R. 42-44.[1]  That

---

[1] Citations to the underlying administrative record (Dkt. No. 2) are designated as "R."

application was denied on July 21, 2004.  R. 25-28.  Plaintiff timely requested an oral hearing, R.

29,  which subsequently took place on August 23, 2005, with Administrative Law Judge ("ALJ") J.

Robert Brown presiding.  R. 175-204.  Plaintiff, represented by counsel, appeared and provided

testimony.  R. 175-204.  Also present was an independent vocation expert ("VE"), Dr. James Ryan,

who answered hypotheticals posed by the ALJ and Plaintiff's attorney.  R. 199-204.  ALJ Brown

issued a decision on February 24, 2006, in which he determined that Plaintiff is not "disabled" under

the Act.  Plaintiff timely requested review of that decision by the Appeals Council.  R. 7-10.  On

June 1, 2006, when the Appeals Council denied review, R. 4-6, the ALJ's determination became the

final decision of the Commissioner.

Plaintiff, acting through counsel, commenced this action on July 24, 2006.  Compl. (Dkt.

No. 1).  The Commissioner filed an Answer on August 30, 2006.  Dkt. No. 3.  Both parties have

moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  See Pl.'s

Br. (Dkt. No. 5); Def.'s Br. (Dkt. No. 6).

### B. Plaintiff's History

Plaintiff was born November 4, 1961.  She was 41 years old at the alleged onset date of her

disability.  R. 42, 178.  She has a high school education and one semester of college.  R. 182.

Plaintiff previously owned and operated a small day care and worked in bookkeeping.  R. 63,187.

Later, she worked as a sales associate, then in a clerical position, where she was responsible for

inventorying merchandise, and finally in human resources, where she was responsible for payroll,

interviewing, hiring, and firing, dealing with shortages, and working with the sale associates,

managers, and high ranking personnel.  R. 54, 63-68, 181-82.  She found this last position to be "a

very, very stressful job."  R. 182.  During her tenure in human resources, she claims she experienced

chronic pain, and this interfered with her job performance.  She left her employment on September

29, 2003 after her physician told her to stop working.  R. 54, 189.  She alleges that date as the onset

of her disability.  R. 54.

Plaintiff first began treating with Dr. Richard Handler, a Rheumatology specialist, on April

4, 2001, when she complained of fatigue, pain, and insomnia.  R. 106, 171.  Dr. Handler referred

Plaintiff for evaluations of her knees, hand, pelvis, lumbar spine and back, all of which came back

essentially normal for a woman of her age.  R. 100-03.  A CAT scan of Plaintiff's lumbar spine did

show degenerative disc disease at L4-5 and a midline bulge of the annulus fibrosis at L4-5 but no

franc disc herniation and intact dural sac and nerve roots.  Dr. Handler diagnosed Plaintiff with

systemic fibromyalgia, insomnia, and anxiety.  R. 106.  He referred Plaintiff to psychiatrist Donald

Fava, Ph.D. for treatment of her anxiety.  R. 107.  Dr. Handler treated Plaintiff for approximately

three years before advising her that she should leave work.  R. 196.  He made this recommendation

because he considered Plaintiff "unable to function" in the work setting as a result of her pain,

fatigue, and inability to deal with stress.  R. 111, 107.

In June of 2004, Dr. Handler evaluated Plaintiff's attitude as good, her appearance as neat

and healthy, and her behavior appropriate; he found her speech, thought and perception to be clear

and normal, but her mood and affect anhedonic and depressive.  R. 110.  He noted that her insight

and judgment, as well as her ability to perform calculations was normal, and that she was able to

function at home with help from her husband, but was unable to function in a work setting.  R. 111.

He assessed Plaintiff as being able to occasionally lift up to twenty pounds; stand and/or walk up to

two hours a day; and sit less than six hours per day.  He also found her limited by pain.  He

described her as having no limitation in understanding and memory, sustained concentration and

persistence, or social interaction.  R. 112-13.  He noted that all medications have failed to eliminate

Plaintiff's symptoms.  R. 107.

On July 19, 2005, Dr. Handler noted that Plaintiff's fibromyalgia was causing her

widespread continuous pain, which, in combination with her other symptoms left her able to sit and

stand/walk for four hours in an eight hour day, and lift/carry up to twenty pounds.  R. 165-67.  Dr.

Handler concluded that Plaintiff suffered from an "emotional – not physical handicap."  R. 166.  He

opined that Plaintiff was incapable of handling even low levels of work-related stress and that her

symptoms may cause her to miss work more than three times a month.  R. 170-2.  He found her to

have no limit in answering questions or expressing herself.  R. 172.

Plaintiff began treating with Donald Fava, Ph.D. in November 2004, complaining of

"immune system disorder, chronic migraine headaches, fibromyalgia, severe sleep disturbance,

moderate-severe anxiety, and progressive rheumatoid pain symptoms throughout her body."  R. 137.

Dr. Fava assessed Plaintiff as being "volatile and unpredictable," "not oriented for time," and

"show[ing] fluctuating alertness," and he found her speech disorganized, her recent and remote

memory moderately impaired, her thought "characterized by obsessions," and her judgment

deteriorating.  R. 139.  Dr. Fava noted that Plaintiff "experiences episodic depersonalization" and

found her attention/concentration to be poor.  R. 139.  He found her "depressed to anxious and

pressured to agitate."  R. 139.  Dr. Fava diagnosed her as suffering from mood disorder due to

immune disorder and fibromyalgia, bipolar disorder, dysthymia, panic disorder with agoraphobia,

obsessive compulsive disorder, post-traumatic stress disorder, pain disorder, depersonalization

disorder, sleep disorder, stress-related physiological response, self-defeating personality features and

obsessive defeating personality features; he found she had a GAF score of 51.  R. 140-41.  Dr. Fava

4

commented that "[i]n her condition, any type of vocational activity would be impossible."  R. 138.

Plaintiff was referred to Dr. Richard Williams by the New York State Office of Disability Determinations for a psychological functioning assessment.  Dr. Williams consultatively examined Plaintiff of June 8, 2004.  R. 118.  Dr. Williams found her "neat, clean and well dressed . . . . pleasant and cooperative."  R. 119.  He noted that she "was alert and oriented" and her "[a]ttention and concentration were good" as was her immediate memory, but her "delayed recall was very poor."  R. 119.  Her abstract thinking, insight, and judgment were good, and her thoughts clear and logical.  R. 119.  Plaintiff's mood was "somewhat anxious" and her affect appropriate; her speech was in the normal range and thought content unremarkable.  R. 119.  Plaintiff relayed complaints of migraines, increased anxiety, and a very limited daily routine.  R. 119.  Dr. Williams diagnosed her with generalized anxiety disorder, dysthymic disorder, self-reported fibromyalgia pain and migraines, health problems; he reported a GAF score of 55.  R. 119.  Dr. Williams found that Plaintiff "has signs and symptoms of chronic depression and anxiety. . . . Since she has reportedly tried a large number of medications with no success, [her] prognosis is guarded even with continued treatment."  R. 120.

On June 14, 2004, Dr. Sateesh Goswami assessed Plaintiff at the request of the  New York State Office of Disability Determinations.  R. 121-23.  Plaintiff complained of "chronic pain all over and headaches."  She also complained of limits on her daily activities, for example carrying laundry baskets or grocery bags.  R. 121.  Plaintiff related that she did needlework, watches television, reads, and goes to the store for short periods.   R. 121.  She told Dr. Goswami that she can only walk or stand for approximately 30 minutes at a time.  R. 122.

Dr. Goswami's physical examination of Plaintiff found Plaintiff to be "tender all over most

of the joints which she has described in all the trigger points of the fibromyalgia." R. 122. The evaluation revealed some decreased range of motion. Plaintiff was also described as "unable to walk on heels and toes. She loses balance. She can squat minimally . . . . Gait and speech are normal . . . . [M]otor strength is 4+." R. 122.

Dr. Abdul Hameed, a State agency physician, provided a mental RFC assessment of Plaintiff on July 12, 2004. R. 129-31. He opined that there is no evidence of any limitation to Plaintiff's ability to remember locations and work-like procedures; he noted Plaintiff's ability to understand, remember, and carry out short and simple instructions, as well as detailed instructions, were not significantly limited. R. 129. Dr. Hammed also found no significant limitation with regard to Plaintiff's ability to maintain attention for extended periods, sustain an ordinary routine without supervision or work with others. R. 129. He found her only moderately limited with regard to her ability to complete a normal workday and workweek without interruption, and be able to perform at a consistent pace. R. 130. He found Plaintiff's abilities under the heading social interaction to be not significantly limited, and her ability to adapt to changes to be only moderately or not significantly limited. R. 130.

**C. The Hearing**

At her hearing in front of ALJ Brown, Plaintiff related her symptoms, work history, and limitations in daily functions. R. 178-98. She testified that her daily routine was very limited: she can drive a car on short trips; do some needlework until her pain prevents her from continuing; read until her concentration falters, which it does after only a short duration; do minimal shopping; walk for approximately forty-five minutes before pain forces her to stop; lift small items; and perform certain household tasks, though no heavy chores. She explained that she takes medications, though

these often have severe side-effects causing her to withdraw and lack alertness.  R. 184-98.  She stated that she stopped working on the advice of Dr. Handler.  R. 189.  She explained that her symptoms, which include pain, severe headaches, concentration and memory lapses, and anxiety, had negatively affected her job performance and that medications were ineffective and often had side-effects that were debilitating.  See, e.g., R. 189-96.

Following Plaintiff's testimony, the ALJ posed hypotheticals to the VE.  He first asked if jobs exist in the national economy that could be performed by a person of Plaintiff's age and background who was limited to lifting ten pounds frequently, and up to twenty pounds occasionally.  The VE named the positions of packer and appointment clerk as examples of existing opportunities that exist for such a person.  R. 199-200.  The ALJ next asked if sedentary positions exist for such a person if she were limited by her emotional condition to lifting ten pounds; the VE listed the positions of inspector and finish machine operator.  R. 201.  The ALJ then added mild difficulties in concentration, persistence, and pace to the above limitations; the VE said the same positions would be available.  R. 201.

Plaintiff's lawyer asked the VE whether these positions would be available were the hypothetical individual be unable to go to work two out of five days of the week.  The VE responded that they would not; he added that no full-time work would be available to such an individual.  R. 202.  Plaintiff's lawyer next asked if the hypothetical individual would be precluded from working in the named positions if she had difficulty focusing, taking direction, or remembering instructions.  The VE responded that such an individual would be precluded from working in any of the named positions.  R. 203.

7

III.    **LEGAL STANDARD**

   **A.  Standard of Review**

   District courts have jurisdiction to review claims contesting a final decision by the

Commission of Social Security denying disability benefits.  42 U.S.C. § 405(g); 42 U.S.C. §

1383(c)(3).  In reviewing any such claim, a district court may not determine *de novo* whether an

individual is disabled.  42 U.S.C. § 405(g); Wagner v. Sec'y of Health & Human Servs., 906 F.2d

856, 860 (2d Cir. 1990).  Rather, it must defer to the Commissioner's determination unless the

correct legal standards were not applied or substantial evidence in the record does not support the

determination.  Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).  Thus, even where substantial

evidence supports an ALJ's conclusion, if "there is a reasonable basis for doubt whether the ALJ

applied correct legal principles, application of the substantial evidence standard to uphold a finding

of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her

disability determination made according to the correct legal principles."  Id.  Likewise, a reviewing

court should remand any case where an ALJ fails to set forth with sufficient specificity the crucial

factors underlying a determination such that the court is able to decide whether that determination is

supported by substantial evidence, and the case should be remanded.  Ferraris v. Heckler, 728 F.2d

582, 587 (2d Cir. 1984); see also  Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982) (remand is

appropriate where a reviewing court is "unable to fathom the ALJ's rationale in relation to evidence

in the record, especially where credibility determinations and inference drawing is required").

   "Substantial evidence" requires more than a mere scintilla of evidence, yet less than a

preponderance.  Sanchez v. NLRB, 785 F.2d 409 (2d Cir. 1986).  It has been defined as "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Poupore

8

v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Ryan v. Astrue, 650 F. Supp. 2d 207, 216 (N.D.N.Y. 2009).  Where evidence is susceptible to more than one rational interpretation, a court may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

A district court has the authority to affirm, reverse, or modify a final decision of the Commissioner with or without remand.  42 U.S.C. § 405(g).  Granting judgment on the pleadings is appropriate where the material facts are undisputed and where a court may make a judgment on the merits with reference only to the contents of the pleadings.  FED. R. CIV. P. 12(c); Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988).  Remand is warranted where there are gaps in the record and further development of the evidence is needed, or where the ALJ has applied an improper legal standard.  See Butts, 388 F.3d at 385; Rosa v. Callahan, 168 F.3d 72, 82-83 (2d Cir. 1999); Parker v. Harris, 626 F.2d 225, 235 (2d Cir. 1980).  Remand is most appropriate where further findings or explanation will clarify the rationale for the ALJ's decision.  Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (citation omitted).  By contrast, reversal and remand solely for calculation of benefits is appropriate when there is "persuasive proof of disability" and further development of the record would not serve any purpose.  Rosa, 168 F.3d at 83; Parker, 626 F.2d at

9

235; Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983).

### B. Benefits Eligibility

Under the Social Security Act, an individual is disabled if he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). The Social Security Administration ("SSA") has established a five-step sequential evaluation process to determine whether a claimant over the age of 18 is disabled under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520; see also Bowen v. Yuckert, 482 U.S. 137 (1987) (upholding the validity of this evaluation process); Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 200) (citing DeChirico v. Callahan, 134 F.3d 1177, 1179-80 (2d Cir. 1998)). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The plaintiff bears the burden of proof for the first four steps, and the Commissioner bears that burden in step five. See Bowen, 482 U.S. at 146; Shaw, 221 F.3d at 132.

20 C.F.R. § 404.1520 details the SSA's five-step analysis: at step one, the ALJ considers whether the claimant is currently engaged in substantial gainful activity.[2] If the claimant is not engaged in such activity, the ALJ advances to step two of the analysis and considers whether the claimant has a severe impairment meeting the "durational requirement"[3] and significantly limiting

---

[2] 20 C.F.R. § 404.1572(a) defines "substantial work activity" as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(b) defines "gainful work activity" as "the kind of work usually done for pay or profit."

[3] The impairment must either be expected to result in death or must last for, or be expected to last for, a continuous period of at least 12 months. 20 C.F.R. § 404.1509.

her physical or mental ability to perform basic work activities.  In making this determination, the

ALJ does not consider the claimant's age, education, or work experience.  Assuming the ALJ finds

the claimant has a severe impairment(s), the ALJ continues to step three and determines whether the

impairment(s) meets or equals any of those listed in Appendix 1, Subpart P of Regulation No. 4

("the Listings").  If the ALJ concludes that the claimant's impairment(s) does meet or equal one or

more of the Listings, the claimant is deemed disabled.  If the claimant's impairment(s) does not

meet or equal one of the Listings, the fourth step of the evaluation requires the ALJ to assess

whether, despite the claimant's severe impairment, the claimant's residual functional capacity

("RFC")[4] allows him to perform his past work.

     If the claimant is unable to perform her past work, the fifth step in the sequential analysis is

a two-part process which requires the ALJ to first assess the claimant's job qualifications by

considering her physical ability, age, education, and work experience, and then determine whether

jobs exist in the national economy that she could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R.

§ 404.1520(f); Heckler, 461 U.S. 458, 460 (1983).  The ALJ satisfies the second part of the process

by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part

404, Subpart P, Appendix 2 ("the Grids").  See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986).

Where a claimant only suffers from exertional impairments, the grids are conclusive of the existence

of a disability; where, however, "a claimant suffers from additional 'nonexertional' impairments,

---

    [4] RFC is defined as the most a claimant can do after considering the effects of all her
medically determinable physical and mental limitations, including those not deemed "severe."  See
20 C.F.R. § 404.1545; SSR 96-8p.

the grid rules may not be controlling."[5]  Id. at 605.  The applicability of the grids is case-specific.

> If the guidelines adequately reflect a claimant's condition, then their use to determine disability status is appropriate.  But if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" then the grids obviously will not accurately determine disability status because they fail to take into account claimant's nonexertional impairments.  Accordingly, where the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment the application of the grids is inappropriate.  By the use of the phrase "significantly diminish" we mean the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.

Id. at 606 (internal citations omitted).

## IV.  DISCUSSION

### A.  The Commissioner's Decision

The ALJ first determined that Plaintiff meets the nondisability requirements set forth in §

216(i) of the Act and is insured for DIB through the date of his decision; he then found that Plaintiff

has not engaged in substantial gainful activity since her alleged onset date.  R. 15, 21.

Moving to step two of the five-step analysis, the ALJ determined that Plaintiff's complained

of migraine headaches are a non-severe impairment, explaining that "[w]hile there is mention of one

headache to her chiropractor in May 2005 and increased headaches to her primary care physician in

June 2005, there is no other objective medical evidence of significant difficulty with migraine

---

[5] Exertional limitations are those imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet the strength demands of jobs (i.e., sitting, standing, walking, lifting, carrying, pushing, and pulling).  See 20 C.F.R. §§ 404.1569a(b), 416.969a(b).  "Nonexertional limitations" are those imposed by impairments and related symptoms, such as pain, affecting a claimant's ability to meet the requirements of jobs other than the strength demands.  See 20 C.F.R. §§ 404.1569a(c), 416.969a(c); Rodriguez v. Apfel, No. 96 Civ. 8330, 1998 WL 150981 at *10 n.12 (S.D.N.Y. Mar. 31, 1998)

headaches in this record." R. 15. The ALJ did find that Plaintiff's fibromyalgia and generalized anxiety disorder are "severe" impairments under the Regulations. He concluded, however, that these "severe" impairments did not meet or medically equally, either singularly or in combination, one of the Listings. R. 15-16, 21. In determining that Plaintiff's fibromyalgia is not of Listing-level severity, the ALJ noted that no Listing specifically addresses this condition, but that he considered the musculoskeletal Listing and Listing 12.06 (Anxiety-related disorders). As to the former category, the ALJ found Plaintiff "has none of the symptoms or objective medical findings under that category." R. 16. As to the Listing 12.06, the ALJ found Plaintiff's impairments do not meet the degree of limitation required in section B.[6] In particular, the ALJ considered Plaintiff to have no restrictions in the activities of daily living; mild limitations in maintaining social functioning; moderate limitations in concentration, persistence, and pace; and only one or two episodes of deterioration of an extended period. R. 16.

The ALJ next determined that Plaintiff's RFC is limited to sedentary work. R. 21. He did so after consideration of Plaintiff's testimony and objective medical evidence provided by her treating physician, Dr. Handler, her treating psychologist, Dr. Fava, her chiropractor, Dr. Orlando,[7] and State agency consultants, Dr. Williams and Dr. Goswami. The ALJ accorded "little weight" to Dr. Fava's assessment, explaining it is inconsistent with other medical evidence, in particular, Dr.

---

[6] In addition to meeting the requirements of subsection (A), 12.06(B) requires the presence of at least two of the following limitations: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. App. 1, Subpt. P, Reg. No. 4, § 12.06.

[7] Plaintiff saw Dr. W. Orlando, a chiropractor, from March 2005 through June 2005. R. 147-62. Dr. Orlando opined that Plaintiff was disabled.

13

Handler's opinion. He found Plaintiff not entirely credible. Additionally, the ALJ gave "little weight to Dr. Orlando's opinion, as he does not qualify as a "acceptable medical source" under 20 C.F.R. § 404.1513. R. 18.

Based on that RFC determination and Plaintiff's education, work history, and status as a "younger individual," see 20 C.F.R. § 404.1563, the ALJ determined that Plaintiff had no transferable skills. R. 19. Noting that the Medical Vocational Guidelines may be used only as a framework when a claimant cannot perform all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the ALJ nevertheless found that, in this case, they could be used to direct an unfavorable decision. R. 19. He found that Plaintiff has the exertional capacity to perform substantially all of the requirements of sedentary work, *i.e.* work that involves lifting no more than ten pounds at a time, entails occasional lifting of light objects, largely involves sitting, though requires a certain amount of walking and standing. R. 19; see 20 C.F.R. § 404.1567(a).

At the hearing, the ALJ asked the vocational expert to consider the degree of limitation under the "B" criteria that the ALJ found Plaintiff to have -- no restrictions in the activities of daily living; mild limitations in maintaining social functioning; moderate limitations in concentration, persistence, and pace; and only one or two episodes of deterioration of an extended period – and to determine whether a person with such limitations would be capable of performing work that exists in the national economy. The VE determined that the limitations presented would have minimal impact on the number of available jobs, including the positions of receptionist; inspector; and finish machinist. R. 19-20. Based on these findings, the ALJ determined that Plaintiff is not "disabled." R. 20-21. This determination was adopted by the Commissioner when the Appeals Council denied

14

review.

**B. Plaintiff's Objections**

Plaintiff objects to the Commissioner's determination in step five of the sequential evaluation, arguing that he has not met his burden of proving Plaintiff's ability to perform other work existing in the national economy.  Pl.'s Br. at 12.  Plaintiff asserts that the Commissioner's finding that she has the RFC to perform sedentary work not reduced by any nonexertional limitations is not supported by substantial evidence; she insists that the Commissioner's contrary finding rests on an improper evaluation of Dr. Handler's opinion.  Id. at 13.  It also rests on what Plaintiff contends was an improper weighting of Dr. Fava's opinion.  Id.  Further, Plaintiff asserts that the Commissioner misunderstood the mental impairments and fibromyalgia condition she alleges.  Id. 14-15.  She also claims that the Commissioner failed to articulate specific findings with regard to the degree of limitation that her mental impairments cause.  Id. at 15.  She contends that the Commissioner's application of the Grids in his reaching unfavorable determination was inappropriate as it failed to account for Plaintiff's nonexertional limitations.  Id. at 15-16.  Finally, Plaintiff asserts that the Commissioner improperly discredited her subjective complaints and, additionally, failed to provide an explicit rationale for his rejection of her testimony.  Id. at 17-18.

**C. The ALJ's Determination is Erroneous and Not Supported by Substantial Evidence**

*1. The ALJ Improperly Applied the Medical Vocational Guidelines*

The regulations define "sedentary work" as work that "involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking

15

and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §
404.1527(a). The ALJ found that Plaintiff "has the exertional capacity to perform substantially of
the requirements of sedentary work . . . ." R. 18, 21. Next, after noting that application of the Grids
is inappropriate where a claimant's RFC is complicated by nonexertional limitations, the ALJ found
that this did not prevent their application in Plaintiff's case. R. 19, 21. He then determined that
Medical-Vocational Rule 201.28 directed a finding of not disabled. R. 19. This finding is not
supported by substantial evidence.

       The record documents nonexertional limitations experienced by Plaintiff that the ALJ failed
to consider in making his determination. Plaintiff's treating physician, Dr. Handler, for instance
notes that Plaintiff, experiences continuous, widespread pain, R. 165, and is unable to tolerate even
low levels of work-related stress, R. 170. He further notes that these symptoms may cause Plaintiff
to miss work more than three times per month. R. 170. He adds that Plaintiff additionally suffers
psychological limitations that would limit Plaintiff's ability to work at a regular job on a sustained
basis. R. 170. The nonexertional limitations identified by Dr. Handler impose more than a
"negligible" loss in Plaintiff's work capacity, Bapp, 802 F.2d at 606; in fact, these limitations
appear to have been the basis for Dr. Handler's advice that Plaintiff leave her prior job in human
resources. R. 170, 189; Cf. Zwick v. Apfel, 1998 WL 426800, at *8-9 (S.D.N.Y. July 27, 1998).
That position was admittedly more stressful than those suggested by the VE. R. 200. Nevertheless,
the Court finds nothing in the ALJ's decision supporting his implicit conclusion that Plaintiff's
nonexertional limitations only negligibly affect her work opportunities. Much of the medical
record, in fact, supports the opposite conclusion. See, e.g., 170.

       Dr. Hameed opined that Plaintiff is only moderately limited with regard to her ability to

16

complete a normal workday and workweek without interruption, and is able to perform at a consistent pace. R. 130. By nature of his position as a State agency medical consultant, Dr. Hameed is deemed a qualified expert in the field of social security disability. As such, the ALJ rightfully considered his opinion. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2); see also Shisler v. Sullivan, 3 F.3d 563, 567-68 (2d Cir. 1993). Nevertheless, the ALJ's decision does not suggest that he relied upon Dr. Hameed's opinion to override Dr. Handler's opinion with regard to Plaintiff's non-exertional limitations. In fact, there is no mention of Dr. Hameed's findings. The Court first notes that before a non-examining source's opinion can be used to override a treating source's opinion, the former must be shown to be adequately supported by evidence in the record. Diaz v. Shalala, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (citing Schisler, 3 F.3d at 567-68). Moreover, absent express reliance on Dr. Hameed's opinion, this Court cannot attribute that opinion as the basis for the ALJ's determination. Ferraris v. Heckler, 728 F.2d at 587 (remand appropriate where an ALJ fails to set forth with sufficient specificity the crucial factors underlying a determination).

Importantly, despite his purportedly giving "great weight" to Dr. Handler's opinion, R. 18, the ALJ's decision utterly fails to address the nonexertional limitations contained therein. Given this oversight the application of the Court does not find the ALJ's determination to apply the Grids to direct an unfavorable decision supported by substantial evidence. Cf. Zwick v. Apfel, 1998 WL 426800, at *8-9 (S.D.N.Y. July 27, 1998). Remand is necessary to allow the Commissioner to consider the effect of Plaintiff's nonexertional limitations. See id.; Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996).

*2. The ALJ's Accordance of "Little Weight" to Dr. Fava was in Error*

17

In reaching his ultimate determination that Plaintiff is not disabled and that her mental impairments are not of Listing-level severity, the ALJ accorded little weight to the opinion of Dr. Fava, Plaintiff's treating psychiatrist.  R. 18.  "[A] treating source's opinion on the issue(s) of the nature and severity of your impairment(s)" will be given "controlling weight" if that opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record."  20 C.F.R. § 404.1527(d)(2); Shaw 221 F.3d at 134; Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003).

The ALJ partially explained his decision to largely disregard Dr. Fava's opinion based on the lack of treatment records he submitted to support his opinion.  R. 18.  He further justifies his weighting of Dr. Fava's opinion by stating that it is not supported by other medical evidence in the record, specifically Dr. Handler's evaluation of Plaintiff.

An ALJ, unlike a judge, has an affirmative duty to develop the record.  Echevarria v. Secretary of Health & Human Servs., 685 F.2d 751, 755-56 (2d Cir.1982).  Thus, an ALJ "cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record."  Rosa, 168 F.3d at 79; see 20 C.F.R. § 404.1512(e) ("When the evidence we receive from your treating physician ... or other medical source is inadequate for us to determine whether you are disabled, ... [w]e will first recontact your treating physician ... or other medical source to determine whether the additional information we need is readily available.").  "[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly."  Hartnett v. Apfel, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) (citing Clark, 143 F.3d 115, 118 (2d Cir. 1998)).  "This duty arises from the Commissioner's regulatory obligations to

18

develop a complete medical record before making a disability determination,, and exists even when, as here, the claimant is represented by counsel." Pratts, 94 F.3d at 37.  There is no evidence that the ALJ attempted to fill the gaps in the record by requesting the documentation underlying Dr. Fava's assessment; nor is there any indication that he followed up with either Dr. Fava or Dr. Handler to determine whether their opinions are capable of being reconciled.  The ALJ's failure to fulfill his affirmative duty thus presents an additional basis for remand.

The Court notes that the ALJ's determination with regard to the severity of the limitations imposed by Plaintiff's mental impairments is intimately linked to his conclusion that Dr. Fava's opinion should receive little weight.  Because the ALJ provided an insufficient basis for the weight given to Dr. Fava's opinion, the Court finds that, on remand, the ALJ should reconsider the severity of Plaintiff's mental impairments in light of any change in that weighting.

### 3. The ALJ Insufficiently Documented his Credibility Assessment

The ALJ reached his conclusion that Plaintiff's fibromyalgia and mental impairments do not qualify her as disabled under the Act, in part, by dismissing certain alleged impairments (e.g., headaches) and minimizing others (e.g., emotional limitations) because they were not supported by objective medical evidence.  R. 18.  He then found that Plaintiff's subjective account of her limitations was not entirely credible.  R. 18, 21.

The consideration of subjective complaints is particularly pertinent where a claimant suffers from fibromyalgia.  McCarty v. Astrue, No. 5:05-CV-953, 2008 WL 3884357, at *6 (N.D.N.Y. Aug. 18, 2008) (citing Green-Younger, 335 F.3d at 108; Lisa v. Sec'y of Dep't of Health and Human Servs., 940 F.2d 40, 44-45 (2d Cir. 1991)).  This is because "fibromyalgia is a disabling impairment" that "eludes . . . measurement" through objective medical evidence because there are

19

"no objective tests which can conclusively confirm the disease." Green-Younger, 335 F.3d at 108 (citations omitted).

The ALJ, however, did not rely on Plaintiff's subjective complaints, because he found her not entirely credible. R. 18. He based this credibility assessment on inconsistent statements between what Plaintiff told Dr. Williams (that she does no cleaning) and her testimony (that she had only modified her tasks not eliminated them); her significant complaints of headaches in the administrative hearing versus the relatively bare medical record documenting those; and the degree of physical limitation Plaintiff asserted versus that which Dr. Handler assessed. R. 18.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). An ALJ must provide specific reasons for his credibility finding; this rationale must be sufficiently specific to make clear to the claimant and reviewing courts what weight the ALJ afforded to the claimant's statements and the reasons for that weight. See SSR 96-7p. The ALJ's credibility assessment is entitled to great deference if it is supported by substantial evidence. Murphy v. Barnhart, No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citations omitted).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. §§ 404.1529, 416.929. The ALJ must first determine whether, based upon the objective medical evidence, a claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."

20

20 C.F.R. § 404.1529(a).

Second, if the medical evidence establishes the existence of such impairments, the ALJ need only evaluate the intensity, persistence, and limiting effects of the claimant's symptoms and determine the extent to which they limit that claimant's capacity to work.  See 20 C.F.R. § 404.1529(c).  If the objective evidence does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the claimant's subjective complaints by considering the record in light of the following factors: (1) the claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3); SSR 96-7p.  The ALJ should also consider other factors, such as the claimant's prior work history.  SSR 96-7p; Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) ("A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.").

The ALJ failed to follow the above requirements.  First, he did not address the step one requirement of determining whether based upon the objective medical evidence, a Plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a).  Rather, the ALJ simply discounts her subjective complaints due to inconsistencies in her statements to doctors and in her testimony, and by noting some inconsistency between Dr. Handler's assessment and her own account.  The ALJ also did not specifically address the factors listed in step two.  Instead, he notes only minor discrepancies between Plaintiff's

21

accounts to the ALJ and to Dr. Williams regarding her daily activities.  This insufficient under 20 C.F.R. § 404.1529(c)(3), which requires a more extensive analysis of Plaintiff's subjective account. See Seaton v. Astrue, No. 5:06-CV-0756, 2010 WL 2869561, at *10-11 (N.D.N.Y. July 19, 2010) (Kahn, *J.*).  Moreover, Plaintiff's statements regarding her ability to care for himself "'do not by themselves contradict allegations of disability,' as people should not be penalized for enduring the pain of their disability in order to care for themselves."  Manning v. Astrue, No. 09-CV-0088, 2010 WL 2243350, at *6 (N.D.N.Y. April 30, 2010) (quoting Woodford v. Apfel, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)).  Overall, the ALJ's limited discussion of the factors named in 20 C.F.R. § 404.1529 provides an insufficient basis for this Court to uphold his credibility assessment. Accordingly, on remand, the ALJ should provide a more through explanation for that assessment.


## V.   CONCLUSION

Given the above discussion, remand is appropriate to allow the ALJ to make further findings and/or clarify the basis of his decision consistent with this Memorandum-Decision and Order. Accordingly, it is hereby

**ORDERED**, that the Commissioner's determination of no disability is **VACATED**, and the matter is **REMANDED** for further administrative proceedings; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:     September 29, 2010
                Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

22